Case number 14-1170, Tilden Mining Company, Inc. petitioner v. Secretary of Labor et al. Mr. Moore for the petitioner, Ms. Johnson for the respondents. Good morning. May it please the Court, I'm R. Henry Moore representing the Tilden Mining Company. This case involves the mandatory standard promulgated by the Mine Safety and Health Administration with respect to ground continuity and resistance on grounding systems and the testing of those. There are two things I don't think this case is about. One, it is not a mortgage banker's case. And while we did argue below... When you say that, you're not talking about the subject matter, right? No, the subject matter is not it, but it's not a... We're not arguing at this point that the change in interpretation required rulemaking. That was a subsidiary argument below. Obviously, the Supreme Court has dealt with that issue. I also don't think it's a deference case because frankly... I thought you were arguing... I mean, maybe it's just a repackaging, but you were arguing that this had sufficient substantive content that it still had to go through notice and comment rulemaking. Yes, but that... It's just you're not making the change point from where I stand. We're not arguing a change in interpretation. We're saying that they have adopted essentially a substantive rule. And if you look at the statutory language, first of all, 56-12028 does not talk about extension cords and does not talk about power cords. It does use the term grounding systems. Can I say before you answer that in a case like this where expert material is all around us and the judges are not experts, diagrams, clarification would be most welcome. But in any event, grounding systems appears to me to be a very broad term. And at least I know that in our house we have outlets which ground the electricity. And... Assumably to make it a system, it has to connect with all kinds of things. And I guess it seems to be offhand, the natural reading would be all the things that are supposed to connect with that grounding. I mean, why is that not a sensible reading of regulation? Because a grounding system... I'm sure this building is grounded. But let's take some things easier for us to understand. Your car has an electrical system. And you plug things into it all the time and take it out. And when your battery goes dead, the mechanic checks the electrical system on the car. He doesn't check all your cords and that. And while, Judge Williams, you suggest that while anything you plug in, the problem is that... And we refer back to the Hibbing-Taconite case. We don't have all the diagrams and the like in this because the Hibbing-Taconite case was very clear. Amesha didn't enforce it at all. So the mine's in the iron range up again until 2004. Can I ask... I have a diagram in my head. And if you could explain... I'm going to expose it. And if you could explain to me whether the diagram in my head is wrong, that would be helpful. And I'm going to use the Program Policy Manual, the 2003 version, as my guide here. So it describes three things which it says are part of a grounding system. I understand you may not agree that they're part of one, but I still want to know the pieces. And it's got one, two, three. Number one is equipment grounding conductors. These are the conductors used to connect the metal frames of electrical equipment to the grounding electrode conductor. So that's one thing, right? That's the metal frame around whatever the piece of equipment is. You can think of it best as you have a... if you have a house, you have an electrical box in the basement, and that's what... Okay, well, see, I don't want to think about it that way. I want to think about a piece of... I want to know what's wrong with what I'm thinking about. You have a large piece of portable electronic equipment, okay? An electric generator, for example. And I have it in my attic to make sure the air conditioner or the heater works when the storm comes. Imagine that, okay? And there is something around that, which is the electrical grounding conductor. Then there is something called a grounding electrode conductor, which they describe as the conductors connecting the grounding electrode to the equipment grounding conductor. And then the bottom thing is the grounding electrodes, which are the rods, which maybe might be described as lightning rod in the end, whatever in the end is grounded into the ground. Yes. Right? Okay. So why isn't... is an extension cord a grounding electrode conductor? Do you agree with that? If it were plugged in, yes. Yes. So if... But if it's not plugged in... Okay, fine. It's not working when it's not plugged in. But when it's plugged in, you have an electronic machine, you plug in the extension cord, and then, hopefully with a three-prong plug, you plug it into the outlet. And at that point, it is a grounding electrode conductor, correct? If it has a grounding electrode. If it has a third wire. If it has a third wire. All right. Right? And that's the wire that doesn't conduct electricity, except in the short, in which case the hope is that instead of going through my hand, it will go through this third wire. Is that right? Yes. Okay. So it is what is necessary to take... to get the equipment, I don't know, the drill in my... electric drill in my hand to the power source, right? That third wire is what drives it. Right? Yes. Okay. So, now the question is, since it is a grounding electrode conductor, and it is necessary to complete the circuit, why isn't it a reasonable reading of the words, grounding system, to include the prong at the end that puts it into the home system, which eventually leads to the grounding electrodes, the third wire, which is running through the extension cord, and whatever the housing of my drill, why isn't all of that a system? Well, Your Honor, let me say this. This in the policy is policy. The standard itself speaks of a grounding system. I know. What I want to know is why it's not a reasonable reading for this to be a grounding system. It's three pieces, all of which are necessary to complete the circuit. Because otherwise the standard really doesn't fit power cords to your drill or extension cords. And the reason is, we're talking about a grounding system, and looking back at the Hibbing-Taconite case... I want to pretend that didn't occur, okay? Pretend it didn't occur, then we wouldn't have the record we have here. We would have a fuller, more complete record with very similar... You can keep the record you want. I just don't want the findings, because I don't know whether that case was rightly or wrongly decided. So I don't want anything about... All right. Don't worry about your time. I'm not worried about it. We don't understand this. I've been before you enough, Your Honor. Exactly. All right. Here's the thing. We've got a standard that says you've got to test it every time you install it. And that makes sense if you're talking about some system that's in place to serve for grounding. It doesn't make sense for extension cords. We have... You can have it, if you interpret installation, if you define installation, it would be every time you plugged it in. So every time the clerks came in here and plugged in their laptops, that would be a new installation. Well, the agency says that installing is the first time. When you buy the cord and you bring it up there and you install it. But that is a different question. Maybe the installation... That's a separate question about whether it's reasonable to require looks every time, reexamination every time it's plugged in. But what I'm trying to figure out is why isn't it reasonable to think of those three pieces, including the thing that connects the electrical equipment to the outlet, part of a system of grounding. If you're talking about something that's stationary and fixed, it is reasonable. The problem is that when you apply it to something like extension cords and power cords, that it may be plugged in hundreds of times in a given year, that you cannot... The rest of the standard doesn't fit. The installation doesn't fit. Their own interpretation... Why? Maybe there's just a lot of installations. It's pretty easy to test these things, right? When there's something like this, it takes a couple seconds. I'm not necessarily sure that it's all that easy. Because here's the thing... Well, yeah, there's our one that says a couple seconds. Oh, yeah, that's what he says. But here's the thing. You're talking about a cord. A grounding system. So frankly, if you plug in a cord, in a sense you've modified the system. And again, that doesn't... It doesn't fit. So your position is that nothing that has to be plugged into an outlet is part of a system. So if there's huge electrical equipment, but it's... Your position is it's only if it is permanently installed directly into the electrical current? Is that it? No other... Nothing else is part of a grounding system? That's the way we see it, Your Honor. What do you do with the words in the definition that says electrical grounding means to connect with the ground to make the earth part of the circuit? That's the agency's definition. That was a definition before the Taconite case. Right. So it does seem like if that's the definition of electrical grounding, that just adding the system is what's necessary to make that happen. Well, let's take your large equipment. I mean, that's not... It's not plugged in. When you have a motor... It's attached to electricity somehow. It's permanently wired. Yeah, I understand that. So your position is only if it's permanently wired? Essentially, yes. But wait, you've got a regulation, 30 CFR 56.12027, that talks about grounding mobile equipment. So it can't be limited to permanent stuff. You've got to deal with mobile equipment. But it's mobile equipment with trailing cables. What's a trailing cable? A trailing cable, though the Secretary tries to equate it to an extension cord, what happens with a trailing cable is it's connected either into a substation or a junction box that connects into a substation. Okay, so you're bound by electricity. Give me an example of a piece of mobile equipment and then what the trailing cable is on it. Can I just understand that? Are you saying that's permanent? It's mobile, but it's permanent? Well, it's semi-permanent. Can it be detached? Well... Move to another part of the mind? Not easily. You can't just pull it out of the wall. I'll give you an example. No, no, no. Help me understand just for a minute. Can it be detached? It can be detached given certain procedures in place. Because what you would have to do is de-energize the source of power, then perform electrical work to disconnect it. It is not unplugging. For example, a large drill in one of these attack and night mines that we're talking about has a trailing cable that goes back normally either to a substation or a junction box and gets physically, electrically connected. But you just can't pull it out. But every time it's connected, is that an installation? Yes. That's the way it's treated, yes. Right. So, conceptually at least, it looks very much like plugging the cable in. I appreciate you don't do it as often, but it serves the same purpose, right? There has to be some grounding wire in that trailing cord, right? There is a grounding wire in the cable, but it is not the same thing. To equate extension cords to that sort of trailing cable is to say this building is the equivalent of a shack that a homeless person builds. It's not the same thing. It's a matter of extreme degree. So, it's a matter of degree, but it is conceptually the same. You have a very large drill attached by a trailing cable that is then plugged in, attached or installed into a power source, right? Into a substation. Right, which ultimately is attached to the electrical grid. Yes. Similarly, you have a very small drill. Sometimes it may have its own cord long enough to plug into that. I never seem to be able to get that. I always have to add an extension cord. It is plugged into my, with a three-prong plug, into my power outlet. Now, I appreciate one is bigger than the other, but conceptually it looks identical, or at least identical enough that we would regard what the agency says as a reasonable reading of its rule. Tell me why that's not so. That's not so because repeatedly in its own policy, this agency keeps drawing exceptions for things like extension and power cords. For example, they mention in there that if you have a ground fault interrupter, that you don't have to do the continuity test. Well, okay. Where's that in the standard? It's not in the standard. If you're looking for this, it's... Would you rather they require more tests? No, I don't want them to require more tests. Actually, what I want them to do, Your Honor, is to go back and do rulemaking as they should so that this, what I consider the mess of a regulatory standard, gets straightened out so it makes sense. If we thought that the 2003 version of the program policy manual was a reasonable reading of the rule under our, would that be the end of the case? If you thought that it was, the rule was ambiguous... Yeah. ...and then it was a reasonable reading of the rule, yes. That would be the end. By the case law, yes. And you don't think the words grounding systems are ambiguous. That's the point, right? I don't think the standard is ambiguous. You think that because of the context. Yes, I think of the context of the whole standard. The context of testing with every installation makes the reader think this can't possibly apply to everything that requires sticking an extension cord into an outlet. Right. That's exactly right. And while Judge Garland, you've questioned the findings in Heming Takenight, one of the things that's clear from that case is that both an MSHA expert, well, the evidence was that no one interpreted to apply to extension cords. Well, I had one expert testify he didn't. And while you had one engineer from U.S. Steel testify to that and you also had MSHA's survey of the industry that said that people didn't understand it to be that way. Well, the red brief says that the citations would stand if extension cords were regarded as not covered. It doesn't exactly say why that's true. That's an interesting question, Your Honor, because that really hasn't been addressed at the ALJ level or the commission level. And I am not sure that the way this follow-up standards are written, 12.0, 25, 26, and 27, actually apply to hand tools. And that's something that would have to be, frankly, if you ruled that extension cords aren't covered, send it back to the ALJ and he can really address the issue of whether this particular piece of equipment needs to be grounded. Because we all know that there is equipment you can buy, handheld tools and the like, I've got to drill it home. It doesn't have a third prong on the plug. MSHA says- Well, yeah, but that doesn't have anything to do with anything other than litigation, Your Honor. Well, it has something to do with people being shocked and new rules being imposed. I'm not sure what it has to do with you, Your Honor, and certainly not on this record. But I don't think if you rule that extension cords don't have to be tested, I think at this point, based on what the Secretary has asserted, then you probably have to remand it back to the ALJ. And, frankly, the case has gone on long enough. But I think he didn't really address that issue. He addressed the issue of the cords, and that's what we had moved for summary decision on. There's a declaration by Mr. I don't know if I'm saying it right, Leppanen, who said he's been enforcing this regulation as to extension cords at Tilton Mining since 2004. And I didn't see any disputing of that. There was a citation that was issued that was vacated by the solicitor's office. I don't think Mr. Leppanen issued it. One of his co-inspectors issued it. I'm not aware of-and they offered no citations to show that, so I'm not quite sure what he meant by enforcing. But there's no history here that we can point to and say, okay, yeah, these are the ones Leppanen's issued. There are several others pending back before the Department of Review Commission ALJ on this same issue that have been just sitting there waiting for this case. I'm sorry, you said there was one citation. Was it asked to extension cords that was vacated by the solicitor? I'm fairly certain it was, yes. Do you know why it was vacated? And when that citation was? There is nothing in the record that shows why it's vacated. We offered it, asked judicial notice of it. I handled it with the same solicitor who handled Higgins-Tack and I, and that's why it was vacated. But in terms of the rule, at least since 1996, it's been clear that the agency believes that the cords are included, right? Yes. You're not asserting a lack of notice? There's no notice problem in that sense. All right. We're not asserting-well, lack of notice in what sense? Yes, in 2003 they reissued the same policy that Judge Hodgson said was illegal. So that complicates the notice since 1996. We have an ALJ decision which was on appeal, and we had argued what that means, but we have an ALJ decision that said what they were doing was illegal. You have the agency's view in the manual, right? There's no doubt about that. Yes. And there's no doubt about the CFR that says that an ALJ's opinion is not precedential by itself, right? It's not binding on the commission. Right. So you knew that also. So you knew under any circumstance you knew there's a risk that the commission would follow its manual rather than the ALJ. Is that right? Yes, but which do you take, Your Honor? An ALJ decision that was fully litigated or a program policy manual that the Secretary of Labor says isn't binding? This isn't a notice question. I understand that you can make litigation. It's not a notice question. No, it's not a notice question, Your Honor. What we have here, though, is a confusion of any kind of notice because apparently the Secretary of Labor went form shopping. The fundamental question is the meaning of the regulation. Yes, it is the fundamental question. You say in your brief that actually only continuity testing is necessary for power cables and extension cords. The reason I said that, and, of course, the Secretary has taken a position in this litigation that it is not, is that in the Heming-Packeney case their electrical expert said only continuity testing was required. And if you look at their policy, sometimes they require continuity and resistance. Sometimes they do it on various parts of the system. Sometimes they just require resistance. It doesn't make sense. The standard doesn't make sense as they're trying to fit it to the system and fit it to anything that might be added to the system. But there's no reason that both of them couldn't be done on an extension cord, right? Both resistance and continuity can be done on an extension cord. Well, you could do it. I'm not sure how you do. Well, you put a meter at the end and you see how it's changed. You do and you don't because the standard says you're supposed to test the system, not individual components of the system. Fair enough. So then you test the system overall. It's a complicated thing to test an overall grounding system. That's why it's an annual test. It's not a weekly, daily test that the Secretary is really proposing. Okay. Perfect question. But if the Secretary was clear that you just had to do extension cords once a year? Well. What would prohibit that agency from taking the position that they're covered, that they only need to be tested once a year? Then that would read out of the standard the installation and modification. With an insulant when first used or annually thereafter? Well, they could say that today. But tomorrow they could say, no, we want them tested every time you plug them in. Because what they're saying here is, quote, an interpretation, unquote, it is not binding. They can change it just like you change your shirt. And so what we're saying is you look at the rule and figure out what the rule says and see if it makes sense for extension cords. And we don't think it does. Okay. Thank you. Thank you. Good morning. May it please the Court. My name is Sarah Johnson, and I represent the Secretary of Labor. This case is about an electoral standard that has the purpose of protecting minors from electric shock and electrocution. And as you've been discussing, the interpretive question is whether the term grounding systems includes the equipment grounding conductors or ground wires in power and extension cords. Can we follow up the power tool hypothetical that's already engaged us? Is the Secretary saying that there is a material risk when I take an electric screwdriver and I connect it to an outlet without having checked the extension cord, which, as with the garland, turns out to be true for me. I always need it. Absolutely, Your Honor. That is very dangerous for me. That's really dangerous for me. If the equipment is not grounded and the minor touches the metal encasing of the equipment, then the minor will be shocked. And what the testing does... So each time I do that, I should test it. If I want to survive, to put it more carefully, to keep my risks of injury reasonable. Well, the grounding system is there to protect the user. And the testing requirement, the purpose is to test at the beginning to make sure it's working initially. If you repair it or... So you don't test the system. I mean, to be extra safe, you could test every time. But what the standard requires is periodic testing to make sure that the grounding system is functional so that... But is it an installation within the Secretary's view of this regulation each time I plug it in? The standard... I mean, what we're interpreting here is the term grounding system. Yes. And so this case is about the annual testing. And there are several... So you're saying at least for components, each connection, each active connection doesn't count as an installation. It's the first time that it's introduced in the mine. That's how MSHA is currently enforcing the standard. You drift off into this enforcing the standard. And I guess what that conjures up in my mind is the idea that you have written a standard, which at least potentially is very, very broad, and you give it some element of reasonableness by overwhelming under enforcement. Perhaps, would it be helpful to walk through... You were talking before about the components of the system and how building that picture in your mind. Yes. And there's one confusion that I'd like to clear up if I could. The conductor in the extension cord is an equipment grounding conductor rather than a grounding electrode conductor. Oh, thanks. So maybe if I could trace the path of the system so that it's very clear what the system entails. So if you took, for example, the 480-volt welder, inside the welder, the ground wire would be attached to the metal casing of the welder, and then the ground wire runs through the power cord. And that ground wire through the power cord is an equipment grounding conductor. And you'll find that in the lip pan and declaration at number 10. And then at the end of the power cord, you have the plug and the ground prong, as you correctly understood. And when you're using an extension cord, that ground prong would plug into the extension cord, and then you have another round wire running through the extension cord, and that's also an equipment grounding conductor. Wait, wait, wait, wait. So the equipment grounding conductor is not just the metal frame around the welder. It is also the wire inside the extension cord. That is correct. Okay. What is the grounding electrode conductor, then? So the grounding electrode conductor connects the equipment grounding conductor with the grounding electrode. Yes, I understand. But physically, what is it? And where that happens physically, so your extension cord would plug into the wall. On the back side of the outlet, you have another ground wire. That's also an equipment grounding conductor that runs to the circuit breaker or fuse box. And then at the circuit breaker or fuse box, the equipment grounding conductor connects with the grounding electrode conductor. I see. So that's all at the bottom sort of of the house, if we think about it that way. Yes. And then the grounding electrode runs to the grounding electrode, which is the rods. And the reason that the purpose requires interpreting the standard to include these equipment grounding conductors is that it's the circuit breaker or the fuse box that turns off the power to the equipment in the event of an electrical fault. So if the welder were to have a short or some sort of leakage of electricity in the equipment and the metal frame of the equipment became energized, the ground wire would send a signal all the way back to the circuit breaker to turn off the power source to the equipment. And so that's the mechanism that primarily protects the miners from shock. The inside wire in the cord as being the equipment grounding conductor, that's in the Declaration of the Leap Amendment? Yes, at number 10. And I think there was some confusion with the judge. Judge Pius did call it a grounding electrode conductor, but he was referring to the Declaration, which calls it an equipment grounding conductor. But to get back to the issue of… I'm sorry, I just don't… Number 10 says extension cords are grounding conductors because they are used to connect the metal frames or enclosures to the grounding electrode conductor. I see. Right, so if you go to the PPM, the definition of an equipment grounding conductor is to connect to the grounding electrode conductor. Okay. So it seems rather circular, but that's what… Where you cut it off in the chain. Go ahead, sir. So if you come back to the regulation itself, which says you're supposed to test continuity and resistance on grounding systems. And I guess each component of a grounding system is your position. It's different… I'm sorry, what resistance is there to test in an extension cord or a power cord? Isn't the whole point that they don't have resistance? Power is supposed to travel through it? So the concept of continuity is that the current flows without interruption. And the concept of resistance is basically the speed with which the electricity flows back. And so you want very low resistance in these equipment grounding conductors and in your grounding electrode conductors so that the message returns quickly to the circuit breaker to turn off the power. So when you test with the ohm meter, you're testing… It'll tell you that the wire is continuous if you get a reading. And then it will tell you how low the resistance is. Okay. And so you can actually have a problem in extension cords if they're not working, that the resistance would appear? That it would be too high. Okay. So what would happen if you had high resistance in the cord would be… It would take longer for that message to get back to the circuit breaker fuse box. And so you could have lag time between when the equipment is energized through the electrical fault and when it turns off. I'm just curious of what… You only require records to be kept of resistance testing and not continuity. Is that just because… Why is that? Because continuity is a yes-no question. It's like either it's continuous or it's not. And if you get a reading on resistance, then it would tell you that it's continuous. Okay. Right. It would just show how fast or slow it's moving through. Exactly. And, Your Honor, you also asked whether we test both continuity and resistance on all of the elements. And we require testing of continuity and resistance on both kinds of conductors, the equipment grounding conductors and the grounding electrode conductors. The grounding electrode are the rods that are buried in the earth. You only test resistance. And that's because it's sort of the destination, and there's no continuity to be tested, just resistance. Got it. Okay. And you require a record of the resistance testing. You don't require a record of the continuity testing, even though it's yes or no. You don't require a record that it be done or what? So you don't require a record of the result? Well, if you have a result of resistance measured in ohms… I understand that. But what about the not requiring a record, as seems to be the case, for the continuity testing? The same test… Maybe it's misreading of the PPM. I'm not sure. No. Well, I mean, the standard… So when you do a continuity test, if there is resistance, it would tell you it's continuous. So if you're recording the resistance in ohms, you would need to say, yes, continuous, and whatever the value is in ohms. So it's encompassed in the resistance testing. Yes. Okay. So if it doesn't run to it, then there wouldn't be any… Because you wouldn't record any… The resistance recording wouldn't happen because the electricity wouldn't get… You would get an error. Right. And problems in continuity are caused by breaks. Is that right? Or other things? Yeah. So the reason that it's so important to test the equipment grounding conductors is because they're subject to things like vibration, flexing, and corrosive environments. So with a cord, you have all these environmental stressors. And so if you had some sort of a break in the cord or weakness, that could interrupt the continuity. And what affects the resistance? That might be reaching the limits of my technical knowledge. But I do… You've done very well so far. Thank you. I'm not as sparky, but I aspire for purposes of this case. What about installation? Because the regulation does require testing on installation. And where is it that someone mystified by this rule goes to find out what counts as installation? That's not addressed directly in the policy guidance. But to read grounding system… I mean, we don't address the issue of installation directly in the guidance. Isn't it a problem if you have something where installation in one context clearly means the first time when you do it, and for another context, just attaching an extension cord on two ends makes no sense? Isn't the reader likely to be somewhat mystified as to what the actual coverage is at that point? So you're suggesting MSHA should issue some guidance on installation? Maybe even have it in the regulation. I know you like guidance more than regulations. I understand they don't find you. I appreciate your concern. And I guess the question in this case is whether these citations should be affirmed and whether Tilden had enough notice. And there was some discussion about notice previously. It's also meaning. And if the meaning of installation seems to mean one thing, one thing which is arguably inconsistent with applying the merits of the regulation to an extension cord that's continually connected and disconnected, then what is the reader to do? All regulations contain some, or both regulations contain some ambiguities, and so these sorts of things are sorted out through the case law. This isn't ambiguity. I think what they're saying is, look, in trying to figure out what grounding systems are, they have to be something that can be installed and tested upon installation. And when you start talking about extension cords, which is the joy of an extension cord, because it can plug into lots of things, eight different things during a day, and eight different wall outlets during a day, but surely you don't mean that every time you plug in an extension cord you've installed a grounding system. But the regulation also couldn't mean that critical components of the grounding system need not be tested. So you've got a problem with the regulation, is that what you're saying? So we can read installation in a way that is consistent with testing cables and cords, because, as you said, it's the initial testing. Well, it's also every modification. So if I take an extension cord, plug it into the drill, plug it into the outlet, you'd say, fine, let's test it right then. That's the first time you're doing it. And then an hour later I go, done with the power drill, now I'm plugging it into the lights. Is that a new installation or a modification? Because now it's an entirely different grounding system. It's the light's grounding system as opposed to the drill's grounding system. And then the next hour it could be the screwdriver's grounding system. There could be a more expansive reading of those two terms, installation and modification, or narrower ones. And, I mean, in this case we're talking about the annual testing. No, but we're interpreting the regulation to see if this is consistent. Because you can't get deference to an interpretation that is not consistent with the regulatory language. And if the first time I plug in the drill, that's an installation. I don't understand why when I plug in the lights, the first time I plug in the lights with the same extension cord, that's not the installation of yet a new grounding system. Right, but if there were multiple ways to read installation and modification, and some of those ways were consistent with the idea of a grounding system and the overriding purpose to protect minors from electric shock and electrocution, then we could uphold the standard and the Secretary's interpretation of it as reasonable. Because those terms do not absolutely preclude applying the term grounding systems. How do you protect minor safety if you don't require it to be tested when it changes from Don't you have a whole new risk now of you need to test that new grounding system. Now the extension cord is working on lights. I mean, the MSHA, so the risks, the greatest risks are not to those, you know, one plug meeting with another, but the damage that can happen to the cord. And MSHA need not address, I mean, to, I mean, in the recent American coal case that this court decided, that agency doesn't have to do everything to do something, and here MSHA has been. But you have to have a coherent definition of installation, and I just don't understand why it's not a new installation when it's a whole new grounding system. And the exact same risk that you were worried about with the power drill exists with the lights, doesn't it? So it could be that, I mean, it could be that we interpret the standard that to require testing every time cables are plugged and unplugged. Isn't it basically the case that you like to write the regulations very broadly and then make common sense of it in the enforcement, a certain amount of common sense anyway, by giving varying interpretations depending upon context? Well, I mean, this was a standard developed prior to the time MSHA was even an agency by a committee that included representation from the mining community, from labor, from the government. That doesn't insulate you from a question of coherence. It just means you've had 20 years to figure out what installation means with respect to extension cords. At least 20. I take it that your answer to the risk question is that the risk is, as you previously described it just to us, that as you coil these cords a lot, the risk is lack of continuity or lack of resistance, and that testing once a year is sufficient for that purpose, and that that risk doesn't change whether it's plugged into a light or plugged into a drill. The kind of risk we're talking about that you're worried about is not what happens when it's plugged in. The risk is what happens to the cord, to the internal wire itself. That's correct. And to give another practical example. Wait, you're testing the grounding system. The cord's part of it. And so the fact that there was a good connection between the three-prong plug on the drill and the three holes on the extension cord, and so that was a nice, tight, good, effective grounding system, doesn't tell me at all that when I take the lighting system, which maybe has an older plug and doesn't plug in quite as tightly to the extension cord, that that grounding system is going to have the continuity and resistance that you want. I mean, the system is going to change every time the extension cord changes what it's plugged into, isn't it? When MSHA issued the 1994 PPL, it had reviewed data on accidents, injuries, and fatalities related to this standard, and this was the policy that MSHA put forward, I think because of the reasons that Chief Judge Garland was mentioning. And the system is tested in pieces. And so what MSHA is doing here is ensuring that each of these pieces has integrity, that it's tested initially upon modification. To give another practical example of modification, sometimes extension cords are rewired, and there have been instances where a cord is rewired incorrectly, not tested after modification. The female head of the cord was replaced, and it was wired incorrectly, not tested, and then that modification led to a fatality. So modification isn't just plugging and unplugging, but actually can be modifying the cords and cables themselves. So on the assumption that the lights or the power drill are being tested when they first come to the mine, and then annually thereafter, and the cords are doing the same thing, are you saying then that as long as those things, each piece is getting tested upon installation and annually, the risk doesn't come from how good the connection is between the extension cord and the equipment. It only comes from the wiring within either the piece of equipment or the extension cord. So I don't need to worry about the fact that how it plugged in, whether it was a good connection when it plugged into the drill, might not be so good when it plugs into the very old lighting system? I mean, that's the greatest risk, and that's the risk that MSHA has been addressing through its existing enforcement policy, although the secretary could take a different interpretation in the future as to installation and modification, and the court would have to review whether that was a reasonable interpretation of those terms. Except that there is no clear interpretation of installation, is that correct? In MSHA's policy, there is not. But in this case, you have our briefs where we've represented to the court the secretary's interpretation of installation. And the same representation was made to the ALJ and to the commission, correct? Yes. Is there a definition of modification? In the policy? In the regulations? Somewhere, anywhere. No, in the regulations? No, there's not. There's no definition of repair either? No. Right. So I suppose you could make a void for vagueness argument about this regulation, but it hasn't been made. Each of these words can be attacked. This is what happens in adjudication all the time under the Mine Act. That certainly isn't the exact contention. The contention is not vagueness, blurriness at the edges. The contention is incoherence between two elements of the rule, at least assuming a particular definition of installation. And we would urge the court to resolve any inconsistency in favor of the overriding purpose of the standard, which is to protect miner safety and health. If these cables and cords aren't tested, there's a very important component of the grounding system where defects would not be revealed, and it's the component of the grounding system that is most subject to the vibration, flexing, and corrosive environments that can corrupt those components. And so it's where there's more risk. Further questions? Are there any other questions about the – No. No? Okay. Well, I'd urge the court to hold that grounding systems include the equipment, grounding conductors, and cables and cords, and affirm the citations. Thank you. Does the petitioner have any time? All right, we'll give you a minute. Go ahead. Okay. Thank you, Your Honor. I just have a few points. The first point is if current goes on the grounding conductor, it does not go back to a circuit breaker and kick the circuit breaker. It goes to ground, which may be a ground bed, may be a beam that connects into the ground. So the solicitor, I believe, was wrong on that. Second, in terms of risk, if you look at the citations involved in this case, if you read the heavy pack knife case, all of those citations were marked as what is not significant and substantial. And I know some of you have had amateur cases before, but if you look at page 34 of the appendix, the inspector there, Mr. Lippinen, gave an evaluation, and he said the injury or illness is unlikely. And, in fact, in his two, the one that was vacated, and it was in 2008 issued and vacated in 2009, they're all marked as unlikely. And, yes, they are marked as fatal. Wait. Yes, they're marked as fatal, but unlikely to be fatal? Yes. If an illness or injury occurred, they mark it. They say it would be fatal, but, frankly, if you're talking about 110 volts, that's MSHA's default on all electrical citations. But he marked it as unlikely so that the hazard isn't particularly great and there isn't a material risk. But it says that if these untested electrical components were shorted and contact was made, a shock or burn could occur, right? That's what he says. Yes, that's what he says. And he says that's unlikely. Maybe it's unlikely that there's actually... It would be an injury or illness. If you look down... An injury or illness, if you're actually shocked or it's unlikely that a particular cord at a particular time will be shorted, which of the two is he talking about? He is talking, as I understand this form, that an injury is unlikely. Well, there could be two reasons. One, because, you know, it's just a shock, which, personally, I've just seen that happen. A shock is unlikely or... Or that it's unlikely to be shorted. We don't know the answer to that. Either one. Okay. The... We believe that we're not talking about it. They're not chalking this up as a significant risk. It doesn't de-energize the equipment if it goes to ground. In fact, the equipment remains energized. The thing is, if it goes to ground, what it means is if I touch that equipment, I won't get shocked. And that's all it means. It doesn't mean that it will kick the breaker. The breakers are set for either overcurrent or short-circuit protection. Why does it matter whether it kicks the breaker? We're concerned. Well, the solicitor asserted that. I see. We're concerned about the miner's health, not whether the equipment turns off. Well, if the equipment goes off, there's obviously less risk. The other thing I want to point out... I'm sorry. I'm sorry. I had just one... If the equipment is de-energized... Go ahead and make the point you want, and then I have one. The point I want to make also is we've talked about resistance here. And, of course, there's nothing in this standard that says what's acceptable resistance for grounding systems. I will tell you that it is my understanding the grounding resistance that they talk about for a system is approximately 25 ohms. The Wolf Run case we cited in our brief may well talk about that. There is no, and I'm not aware, and the Secretary has not offered any, what is an acceptable resistance for an extension cord because it, frankly, doesn't make sense that that one small component... You're looking at the whole system, and the whole system has got a resistance of somewhere probably 25 ohms or less, which I'm not... I last did ohms in high school. But it's not very much over a whole system, particularly one like any of these systems that involve as much as high voltage of 4160. So 4160 volts. We're only talking... This is not the issue here. Before you sit down, on JA34 and 36, where the citations are, it says on 34 in box 17 that, I guess, I have no idea what a GFCI pigtail is, but they were installed on the emergency lighting. This action by the operator terminates the citation. Got the same language on 36. Action by the operator terminates the citation. Did you have to pay a fine, or did you have to... Is there any continuing effect of these citations? Okay. Here's the way the system works, Your Honor, and I apologize. When you were issued the citation, they give you, as they did in page 34, a certain amount of time to abate it. In this case, they gave us about three hours, two hours and 15 minutes. You have to abate it. And if you don't within that time, as long as the time is reasonable, you may get a withdrawal order requiring you to withdraw from that area of the mine. So there's... Abatement is one thing, but we also got civil penalties for these citations, which are assessed at a later time. Okay. When an EMCHA inspector sees a, quote, what he believes is a violation, in metal and nonmetal, they usually issue the citation the next day, and in coal, they issue it the same day. They issue a citation, they say, you have to abate it, and you do. Okay. So that's what determines the citation, is you do the abatement? Right. And, yes. And in this case, in the case of the extension cord and the light, they did not have to do a continuity test. They just had to put what is a GFCI, ground fault interrupter, on it. Well, the other one says continuity and resistance ground testing were done, received its annual testing. So what is the civil penalty for these citations? I forget what the civil penalties were in this case, but they're in the judge's decision. But there is a civil penalty. It's graduated. It depends on certain criteria, including size. Actually, on the light one, on page 34 of the appendix, that was abated by installing the GFCI, and the one on the welder was abated by doing continuity and resistance testing. But your client is on the line still to pay a penalty for both these citations? Yes. We had to pay a penalty. The penalty was $1,000. Yes. I will say this brings up a point, and I will sit down after that. The fact that you have to abate. So now we're outside of anything that's been argued by either side before about the abatement. So I'd like to keep the rebuttal to rebutting. Okay. I want to go back to something that Judge Williams was inquiring of the solicitor, the fact that how do you figure out what all this means? Well, here's the thing. You're a mine operator, and you've got to comply. And my experience is they want to comply. Just tell us what the rules are. And in this case, in this particular rule, I think what this morning has brought to bear that even with all the policy, it's unclear what all the rules are. Well, it's quite clear that their rule is since 1996 that courts have to be examined annually. So when you say all you want to know is what the rule is and you're happy to comply, that's not exactly right. You want this particular rule overturned, right? Yes, I do, Your Honor, because I think it's a bad rule. I understand. That's different than all I want to know is what the rule is. That's a different position. Because if that's your position, this case will be really easy. No. This standard, as it applied here, is improperly applied because it doesn't apply to the subject matter, and I should have done what I think. That's what I thought your position was. Yes. Thank you. All right, we'll take the matter under submission.
judges: Garland, Millett, Williams